**UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA**

United States of America,

        Plaintiff,                              Civ. No. 11-62 (RHK/JJK)
                                                                 **MEMORANDUM OPINION
                                                                 AND ORDER**

v.

JoAnna Bame, Hook 'N Horn, Ltd.,
and I Am Home, Inc.,

        Defendants.

Daniel A. Applegate, Michael J. Roessner, United States Department of Justice, Tax Division, Washington, D.C., for Plaintiff.

Adam S. Huhta, Huhta Law Firm, PLLC, Minneapolis, Minnesota, for Defendants.

**INTRODUCTION**

This action arises out of the IRS's erroneous refund of nearly $600,000 to Fred H. Bame in 2005, a portion of which was transferred to Bame's wife, Defendant JoAnna Bame, and two of her companies, Defendants I Am Home, Inc. ("I Am Home") and Hook 'n Horn Ltd. ("Hook 'n Horn").[1] The Government commenced the instant action to recover these transfers, and Defendants now move to dismiss. For the reasons set forth below, the Court will deny their Motion.[2]

---

[1] To avoid confusion, the Court refers to Fred and JoAnna Bame by their first names herein.

[2] Having concluded that oral argument would not materially assist the Court's resolution of the Motion, the hearing on the Motion currently scheduled for April 1, 2011, is **CANCELED**.

## BACKGROUND

Fred filed for bankruptcy in 1999. (Compl. ¶ 9.) During those proceedings, the bankruptcy trustee agreed that Fred's bankruptcy estate would pay approximately $580,000 to the IRS to satisfy its tax obligations. (Id. ¶ 15.) The IRS received the agreed-upon payment on January 2, 2003. (Id. ¶ 16.) However, its assessment of the estate's overdue taxes did not occur until July 11, 2005. (Id. ¶ 19.) Accordingly, the estate had a $580,000 credit balance with the IRS for more than two years following the January 2, 2003, payment. (Id. ¶ 20.)

On or about May 1, 2005, before the IRS's tax assessment and for unknown reasons, the credit in the bankruptcy estate's IRS account was transferred to Fred's personal tax account. (Id. ¶¶ 20-21.) After deducting approximately $11,000 for taxes Fred owed, the IRS issued him a refund check of slightly over $568,000. (Id. ¶¶ 22-23.) He then deposited that check into a joint checking account he held with JoAnna in Canada. (Id. ¶ 24.) The following day, several checks were written out of that account to make mortgage payments for properties JoAnna owned. (Id. ¶¶ 25-26.) In addition, some of the money was transferred to I Am Home and Hook 'n Horn, both companies owned or controlled by JoAnna. (Id. ¶¶ 27, 29.)

Once the IRS realized its mistake, it commenced an action against Fred in this Court to recover the erroneous refund. (Id. ¶ 30; see also Civ. No. 07-3527 (PAM/JSM).) Fred died a short time later, and his estate was substituted as a defendant. (Compl. ¶ 31.) The estate then stipulated to the entry of judgment for the full amount sought by the IRS.

(Id. ¶ 32; see also Doc. Nos. 11-12, Civ. No. 07-3527 (PAM/JSM).)  The Complaint does not disclose whether the prior judgment has been satisfied.

On January 10, 2011, the Government commenced the instant action, seeking to recover the transfers to JoAnna, I Am Home, and Hook 'n Horn described above.  The Government asserts three claims in its Complaint:  fraudulent conveyance under the Minnesota Fraudulent Transfer Act, Minn. Stat. § 513.44(a)(1), and the Federal Debt Collection Procedure Act, 28 U.S.C. § 3301 et seq. (Count I); money had and received (Count II); and unjust enrichment (Count III).  Defendants now move to dismiss Count I, the fraudulent-conveyance claim.[3]

## STANDARD OF REVIEW

The Supreme Court set forth the standard for evaluating a Rule 12(b)(6) motion in Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007).  To avoid dismissal, a complaint must include "enough facts to state a claim to relief that is plausible on its face."  Id. at 547.  A "formulaic recitation of the elements of a cause of action" will not suffice.  Id. at 555; accord Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009).  Rather, the complaint must set forth sufficient facts to "nudge[] the[] claim[] across the line from conceivable to plausible."  Twombly, 550 U.S. at 570.  Stated differently, the plaintiff must "assert facts that affirmatively and plausibly suggest that [he] has the right he claims . . . , rather than facts that are merely consistent with such a right."  Stalley v. Catholic Health Initiatives, 509 F.3d 517, 521 (8th Cir. 2007) (citing Twombly, 550 U.S. at 554–57).

---

[3] Defendants initially moved to dismiss Counts II and III, as well, but abandoned that portion of their Motion in their Reply.  (See Reply at 2 n.1.)

When reviewing a motion to dismiss, the Court "must accept [the] plaintiff's specific factual allegations as true but [need] not . . . accept a plaintiff's legal conclusions."  Brown v. Medtronic, Inc., 628 F.3d 451, 459 (8th Cir. 2010) (citing Twombly, 550 U.S. at 556).  The complaint must be construed liberally, and any allegations or reasonable inferences arising therefrom must be interpreted in the light most favorable to the plaintiff.  Twombly, 550 U.S. at 554–56.  A complaint should not be dismissed simply because the Court is doubtful that the plaintiff will be able to prove all of the necessary factual allegations.  Id. at 556.  Accordingly, a well-pleaded complaint will survive a motion to dismiss even if it appears that recovery is very remote and unlikely.  Id.

## ANALYSIS

The crux of Defendants' argument is that the fraudulent-conveyance claim is insufficiently pleaded under Twombly and Iqbal and Federal Rule of Civil Procedure 9(b), which provides that a party "must state with particularity the circumstances constituting fraud."[4]  They contend that the Complaint is inadequate because, while it "quotes various elements of [the] claim[]," it is "bereft of *any* facts supporting any of the elements" of a fraudulent conveyance.  (Reply at 3 (emphasis in original); accord Def. Mem. at 8 ("The only allegations in the Complaint supporting the fraudulent transfer

---

[4] There is no dispute that Rule 9(b) applies to fraudulent-conveyance claims.  See, e.g., SEC v. Brown, 643 F. Supp. 2d 1077, 1080 (D. Minn. 2009) (Tunheim, J., adopting Report & Recommendation of Noel, M.J.); Kranz v. Koenig, 240 F.R.D. 453, 455 (D. Minn. 2007) (Magnuson, J.).

claim merely parrot the legal elements of the claim – no factual basis for the claim[] [is] alleged.").)  The Court does not agree.

Although not cited in the parties' briefs, the Appendix of Forms to the Federal Rules of Civil Procedure scuttles Defendants' argument.  Form 21, entitled "Complaint on a Claim for a Debt and to Set Aside a Fraudulent Conveyance," includes the following simple allegations:

> On [date], defendant [name] conveyed all defendant's real and personal property to defendant [name] for the purpose of defrauding the plaintiff and hindering or delaying the collection of the [plaintiff's] debt.

In its Complaint, the Government has included the same types of allegations as in Form 21.  (See Compl. ¶¶ 25-29 (listing the dates and amounts of transfers from the Bames' Canadian account); id. ¶ 36 ("The transfers . . . were fraudulent as to the United States as they were made with the actual intent to hinder, delay or defraud the United States with respect to its claim against Fred H. Bame.").)

Federal Rule of Civil Procedure 84 provides that the "forms in the Appendix suffice under these rules," which must of course include Rule 9(b).  If the somewhat bare-bones assertions in Form 21 suffice to plead a fraudulent-conveyance claim, then the Complaint here must similarly pass muster.  And Twombly and Iqbal do not (and cannot) change that result.  See Hamilton v. Palm, 621 F.3d 816, 818 (8th Cir. 2010) ("Rule 84 and [the] Form[s] may only be amended 'by the process of amending the Federal Rules, and not by judicial interpretation.'") (quoting Swierkiewicz v. Sorema N.A., 534 U.S. 506, 515 (2002)).

Regardless, the Court would find the Complaint sufficient even if the outcome were not controlled by Form 21 and Rule 84. Defendants argue that the Government has merely alleged that Fred received a refund and then spent it, without alleging "at least *some* facts addressing the claimed *fraudulent* aspects of the transactions involved." (Reply at 3 (emphases in original).) But the Government has alleged far more than Defendants acknowledge. It has alleged that Fred previously filed for bankruptcy, and during the course of those proceedings his indebtedness to the IRS was acknowledged. (Id. ¶¶ 9, 15.) It has alleged that after receiving payment, the IRS erroneously refunded Fred nearly $600,000 (id. ¶ 23) – a fact that cannot seriously be disputed in light of stipulated judgment in the prior action. It has alleged that the refund was deposited into a foreign bank account, and that more than 60% of the refund was spent *the very next day*. (Id. ¶¶ 24-25.) And it has alleged that Fred did not receive reasonably equivalent value for these transfers. (Id. ¶ 35.)

A plausible inference from these facts, if true (which the Court must assume at this juncture), is that Fred, knowing he was not entitled to the refund, secreted it into a foreign bank account and immediately distributed it in the hope that the Government would later be unable to recover it. There is enough in the Complaint to suggest fraudulent intent, which by Rule 9(b)'s own terms must be pleaded only "generally." See Mitsubishi Heavy Indus., Ltd. v. Gen. Elec. Co., 720 F. Supp. 2d 1061, 1068 (W.D. Ark. 2010) (rejecting argument that complaint "should be dismissed for failing to allege facts . . . show[ing] deceptive intent . . . because Rule 9(b) provides that intent may be alleged generally"); see also 5A Charles Alan Wright & Arthur R. Miller, Federal Practice &

Procedure § 1301 at 292 (3rd ed. 2010) (noting that the second sentence of Rule 9(b) "suggests that the draftsmen felt a need to . . . insure that [the Rule] was not interpreted to require a party pleading fraud . . . to allege the specific circumstances of fraudulent intent"). Moreover, the Complaint pleads several of the traditional hallmarks of a fraudulent conveyance, including that Fred (i) "removed" the refund by depositing it into a foreign bank account, (ii) was insolvent before receiving the refund, (iii) transferred a majority of the refund the day after he received it, and (iv) made several transfers to an insider, his wife (or companies controlled by her). See, e.g., Addison v. Seaver (In re Addison), 540 F.3d 805, 813 n.11 (8th Cir. 2008) (listing "badges of fraud"); 28 U.S.C. § 3304(b)(2) (same); Minn. Stat. § 513.44(b) (same).[5] Contrary to Defendants' assertions, the Complaint contains "facts addressing the claimed fraudulent aspects of the transactions involved."

Furthermore, the Complaint specifies the dates of the transfers claimed to be fraudulent, the recipients of those transfers, and their amounts. In order to adequately plead a fraudulent-conveyance claim, a complaint must plead "the who, what, where, when, and how" of the challenged transactions. See SEC v. Brown, 643 F. Supp. 2d 1077, 1081 (D. Minn. 2009) (Tunheim, J., adopting Report & Recommendation of Noel,

---

[5] Defendants argue that JoAnna was not an insider at the time of the transfers (2005) because she divorced Fred in 2001. (Reply at 6.) It is not entirely clear, however, whether that is true. See, e.g., Ramette v. United States (In re Bame), 279 B.R. 833, 835 (8th Cir. BAP 2002) (July 2002 opinion describing Fred as JoAnna's husband); http://www.legacy.com/obituaries/startribune/obituary.aspx?n=fred-harold-bame&pid=94474299 (last visited March 25, 2011) (noting in Fred's 2007 obituary that he was "[s]urvived by [his] wife, JoAnna Bame"). In any event, the support for Defendants' assertion comes from JoAnna's Declaration, which the Court declines to consider when ruling on the pending Motion. See Fed. R. Civ. P. 12(d) (court may decline to consider matters beyond the pleadings when ruling on motion to dismiss).

M.J.). By "specifying the dates and nature of the transactions" in question, as well as pleading several indicia of fraud, the Government has done all that was required here. Spanierman Gallery, PSP v. Love, 320 F. Supp. 2d 108, 114 (S.D.N.Y. 2004); accord, e.g., Allstate Ins. Co. v. St. Anthony's Spine & Joint Inst., P.C., No. 06 C 7010, 2010 WL 3274283, at *3 (N.D. Ill. Aug, 17, 2010); Brown, 643 F. Supp. 2d at 1086; United States v. Rocky Mountain Holdings, Inc., Civ. A. No. 08-3381, 2009 WL 564437, at *6 (E.D. Pa. Mar. 4, 2009) ("Repeatedly, courts have declined to dismiss a claim of intentional fraud under [the Uniform Fraudulent Transfer Act] when a plaintiff has adequately set forth with specificity the details of the challenged transfers and generally pled a sufficient number of the badges of fraud.").

Defendants' arguments to the contrary are not persuasive. They contend, for example, that several IRS representatives told Fred he was entitled to the refund before it was issued. (Def. Mem. at 2.) These assertions, if true, might serve as a defense to the Government's fraudulent-conveyance claim, but the "availability of a defense . . . has no bearing on whether or not the [Government] has stated a claim." Brown, 643 F. Supp. 2d at 1086. They also argue that Fred was a party to a prior lawsuit brought by the Government in this Court and, as a result, it had "the opportunity to conduct discovery . . . to marshal sufficient facts to support the allegations in the Complaint." (Def. Mem. at 11; Reply at 6.) But Defendants overlook that the parties stipulated to the entry of judgment shortly after Fred's estate was served with the complaint in the prior action. (See generally Docket in Civ. No. 07-3527.) There is no indication that any discovery took place in that case – indeed, Fred died approximately 6 weeks after it was

commenced. Finally, Defendants argue that the Complaint fails to properly allege any fraudulent transfer because it does not identify who wrote the checks in question. (Def. Mem. at 4.) Yet, the Complaint alleges that the checks came from the Bames' joint checking account (Compl. ¶ 24), and hence it necessarily suggests that the checks were written by either Fred or JoAnna. Regardless, Defendants can easily identify the challenged transfers, as the Government has pleaded them by date, amount, and check number. The Complaint, therefore, contains sufficient factual detail to permit Defendants to "respond and to prepare a defense" to the Government's "charges of fraud." Commercial Prop. Invs., Inc. v. Quality Inns Int'l, Inc., 61 F.3d 639, 644 (8th Cir. 1995). The Government need not have done anything more. Id.

## CONCLUSION

Based on the foregoing, and all the files, records, and proceedings herein, **IT IS ORDERED** that Defendants' Motion to Dismiss (Doc. No. 8) is **DENIED**.


Date: March 28, 2011

                                                                 s/Richard H. Kyle
                                                                 RICHARD H. KYLE
                                                                 United States District Judge